IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 07, 2021 01:19 PM
SX-2012-CV-00013
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| HOTEL ON THE CAY TIME-SHARING ASSOCIATION, INC.,<br><br>                Plaintiff,<br><br>     v.<br><br>GOVERNMENT OF THE VIRGIN ISLANDS,<br><br>                Defendant. | **CASE NO. SX-2012-CV-00013**<br><br>ACTION FOR DECLRATORY JUDGMENT AND FOR SUPPLEMENTAL RELIEF<br><br>**2021 VI Super 102** |

**Edward L Barry, Esq.**
LAW OFFICES OF EDWARD L. BARRY
St. Croix, U.S.V.I.
*Attorney for Plaintiff*

**Christopher M. Timmons, Esq.**
V.I. DEPARTMENT OF JUSTICE
St. Croix, U.S.V.I.
*Attorney for Defendant*

**BRADY, Douglas A., Judge**

## MEMORANDUM OPINION and ORDER

¶ 1    Before the Court is Defendant Government of the Virgin Islands' ("GVI") fully briefed Motion for Judgment on the Pleadings pursuant to V.I. R. Civ. P. 12(c), filed May 28, 2021. By its Motion, GVI seeks partial judgment on ¶¶ 1 and 2 of the prayers for relief in Plaintiff Hotel on the Cay Time-Sharing Association, Inc.'s ("HOTC") November 2, 2020 First Amended Complaint (seeking declaratory judgment that HOTC is entitled to possession of certain real property interests on Protestant Cay, Christiansted Harbor, St. Croix until December 31, 2039 by virtue of a May 22, 1998 Stipulated Settlement agreement between GVI and HOTC and a separate July 1998 Stipulated Settlement agreement between GVI and Andrew J. Pappas, later assigned to HOTC, in *Government of the Virgin Islands v. Legend Resorts, L.P.*, Civ. No. 612/1996, a Territorial Court eviction action in which HOTC and Pappas intervened ("Eviction Action")). GVI's Motion also seeks judgment on its January 27, 2021 Counterclaim, on Count I (to recover possession of real property per 28 V.I.C. § 281) and Count II (trespass). For the reasons set forth herein, Defendant's Motion will be granted in part, and final judgment will enter in favor of GVI dismissing HOTC's

prayers for relief ¶¶ 1 and 2 of the First Amended Complaint. In light of such judgment, prayers for relief ¶¶ 3 and 4 seeking injunctive relief will be dismissed as moot. Final judgment will further enter in favor of GVI on Count I of its Counterclaim granting recovery of possession of the real property in issue. As to those claims, the Court finds that there is no just reason for delay and enters final judgment pursuant to V.I. R. Civ. P. 54(b). Ruling will be deferred on GVI's Motion seeking damages for trespass (Counterclaim Count II). The Order entered herewith will set an early status conference to address the prompt resolution of all other pending motions and all remaining claims of the First Amended Complaint and Counterclaim.

## BACKGROUND

¶ 2      On April 6, 1964, by Act No. 1179, the Fifth Legislature of the Virgin Islands authorized the Governor of the Virgin Islands to negotiate a new lease for Protestant Cay for a term of 50 years from the date of execution. Pursuant to such authorization, on April 24, 1964, the Government of the Virgin Islands, by the Commissioner of Property and Procurement, with the approval of the Governor, entered into a Lease agreement ("Ground Lease") with Hotel-on-the-Cay, Inc., a Virgin Islands corporation (unrelated to HOTC), including the provision that the lessee's leasehold interest could be assigned with the written consent of the Governor.

¶ 3      Subsequently, two amendments to the Ground Lease were executed. Amendment No. I to Lease Agreement allowed the lessee to mortgage its leasehold interest to facilitate loan financing, dated and approved by the Governor December 30, 1968. Amendment No. II to Lease Agreement, among other things, provided that: "The term of the lease shall be extended for a period of twenty eight (28) years commencing on the date that same is approved by the Governor and the Legislature of the Virgin Islands."[1] Amendment No. II was signed by the then-lessee (by assignment) and the Commissioner of Property and Procurement on April 13 and May 6, 1992, respectively, and "Approved" by the Governor June 30, 1992 and "Approved" by the President of the Legislature December 16, 1992, such that the extended lease term would conclude on December 15, 2020.

¶ 4      In August 1980, then lessee-assignee Oliver Plunkett established by Declaration of Partial Leasehold Ownership Plan Establishing the Hotel on the Cay a Time-Sharing Vacation Ownership

---

[1] Counterclaim, Exhibit E, Amendment No. II § 1.01.

*Hotel on the Cay Time-Sharing Ass'n. Inc., v. Gov't of the V.I.*;    SX-2012-CV-00013
Memorandum Opinion and Order
Page 3 of 18

2021 VI Super 102

Plan ("Declaration"), a condominium timeshare regime over the property creating ownership interests "continuing for the remaining term of said Ground Lease," then a period of approximately 33 years. The Declaration created 2912 timeshare unit-weeks at the resort, about half of which were sold.[2] The owners of the units formally incorporated the Association created by the Declaration in April 1997 as Hotel on the Cay Time-Sharing Association, Inc.

¶ 5    On account of the default of then-lessee assignee Legend Resorts, L.P. under the Ground Lease, as amended, GVI brought its Eviction Action for debt and possession by Complaint filed October 4, 1996. HOTC intervened in the Eviction Action, asserting that termination of the Ground Lease would unfairly destroy the interests of thousands of innocent timeshare owners who had no complicity in the corporate defaults and misdeeds of the developer and subsequent lessee assignees.[3]

¶ 6    HOTC and GVI entered into the Stipulated Settlement in May 1998, which provided that in consideration of HOTC withdrawing its intervenor's complaint, GVI would recognize HOTC as lessee of that portion of Protestant Cay shown on the Declaration, including approximately 1,400 unsold time-share units, free and clear from any and all obligations and defaults of all other prior lessees, effective June 1, 1998, at which time HOTC would commence paying rent of $3,500 per month plus timely payment of hotel room taxes, pro rata real estate taxes and all other obligations due the Government. The Stipulated Settlement stated that the rent obligation "is effective until such time as the Government enters into a new lease with the Association for the premises described in the Declaration, together with all easements and rights set forth therein from the date of the new lease to December 31, 2039, subject to the government being adjudged the prevailing party in the [eviction] action." And further: "The leasehold estate held by the Association expires on December 31, 2039."[4] The Governor, Attorney General, by his counsel,

---

[2] First Amended Complaint, Exhibit A; Counterclaim, Exhibit A, Declaration, § 2.F.

[3] In 1994, Participation Services Corporation ("PSC"), servicer of leasehold mortgage loans to Legend by Fairway Capital Corporation, a Small Business Investment Company, subject to U.S. Small Business Administration regulation, filed a foreclosure action in the Territorial Court (*Participation Services Corporation v. Legend Resorts, L.P.*, Civ. No. 727/1994) that resulted in a consent judgment of foreclosure on the timeshare units and Ground Lease mortgages in favor of PSC. PSC subsequently also intervened in the Eviction Action, contesting GVI's right to terminate the Ground Lease.

[4] First Amended Complaint, Exhibit B; Counterclaim, Exhibit B, Stipulated Settlement ¶¶ 3.a., 3.b.

*Hotel on the Cay Time-Sharing Ass'n. Inc., v. Gov't of the V.I.*;     SX-2012-CV-00013
Memorandum Opinion and Order
Page 4 of 18

2021 VI Super 102

and Commissioner of Property and Procurement of the Virgin Islands, by the Assistant Commissioner, executed the Stipulated Settlement, together with HOTC's president and counsel, on May 22, 1998.

¶ 7     However, notwithstanding its agreement with HOTC 18 months earlier, on December 22, 1999 in the Eviction Action, GVI filed a Motion for Immediate Possession of Protestant Cay, for Summary Judgment against [intervenor] PSC, to Set Aside the Stipulated Settlement [with HOTC], and to Reinstate Intervenor Complaints. GVI contended that the Ground Lease had terminated on the lessee's default and, as here, argued that the Stipulated Settlement was void for failure to obtain the Legislature's ratification of the Stipulated Settlement's purported lease extension as required by 31 V.I.C. § 205(c).[5]

¶ 8     While that motion was pending, on January 19, 2000, the U.S. Small Business Administration filed in the United States District Court for the District of Rhode Island its Complaint for Receivership, Judgment and Permanent Injunctive Relief against Fairway Capital Corporation, a Rhode Island corporation, for, among other things, failure to pay amounts due SBA with regard to loans affecting interests in Protestant Cay ("Receivership Action"). By Order of March 13, 2000, the District Court issued its Receivership Order, appointing SBA Receiver of Fairway's assets, taking exclusive jurisdiction over all assets of Fairway, wherever located, including Fairway's interests in time share units and the Ground Lease of Protestant Cay. The Receivership Order also stayed the Territorial Court eviction action.[6]

¶ 9     In the Receivership Action, GVI presented claims for equitable and monetary relief against the Fairway Receivership estate although it also sought dismissal of the action on subject matter

---

[5] 31 V.I.C. § 205: "Sale, lease or other disposition of government real property

"(c) ... no sale, exchange, lease or sublease of government real estate, nor any use permit of the same for a term exceeding one year (including the period of any allowable extensions or renewals) nor sublease of government real estate for a term exceeding five years (including the period of any allowable extensions or renewals) shall be deemed binding upon the Government of the Virgin Islands, unless and until (1) such proposed sale or exchange or such proposed lease or sublease shall have been submitted to the Legislature, while in regular or special session, (2) shall have been approved by the Legislature; provided, that leases or subleases for a term of not to exceed five years and use permits for a term of over one year but not to exceed five years shall be effective and binding if submitted to and approved by the Committee on Finance of the Legislature when the Legislature is not in session...."

[6] The involved, extensive litigation history relating to Protestant Cay and competing interests in dispute is set out more fully in the Rhode Island District Court's Opinion entered June 8, 2006, and in the April 11, 2007 Opinion of the U.S. Court of Appeals for the First Circuit, affirming the District Court. *See U.S. v. Fairway Capital Corporation*, 433 F. Supp. 226 (D.R.I. 2006), *aff'd* 483 F.3d 34 (1st Cir. 2007).

jurisdiction grounds or, alternatively, sought the District Court's abstention from making any determination as to GVI's equitable claim for possession of Protestant Cay. Those claims were denied,[7] and the District Court granted, in part, GVI's monetary claims against the Receivership estate and denied GVI's equitable claims for immediate possession of Protestant Cay.

¶ 10 In addition to presenting various estoppel claims arising from Territorial Court actions, rejected by the District Court, GVI's primary substantive equitable claim in the Receivership Action for possession of Protestant Cay asserted GVI's argument presented here, the invalidity of the Stipulated Settlement as a new, independent lease that required separate legislative approval pursuant to 31 V.I.C. § 205. The District Court rejected that argument, recognizing that the policies favoring settlement of disputes in litigation require that settlements such as the Stipulated Settlement should not lightly be set aside.[8] The District Court determined the validity of the Stipulated Settlement as in substance a modification of the existing lease, as previously extended by amendment, and not a new and independent lease subject to legislative approval.

¶ 11 While rejecting GVI's claim that the Stipulated Settlement was void *ab initio*, the court nonetheless refused to permit an extension of the Ground Lease as sought by HOTC and as set out in the plain language of the Stipulated Settlement. "The Stipulated Settlement is deemed valid, effective and enforceable until December 15, 2020, which is the conclusion of the term of years set forth in Amendment II to the Ground Lease." In light of the proscription of 31 V.I.C. § 205, the District Court held: "Any attempt to extend the Ground Lease to 2039 under the Stipulated Settlement was ultra vires."[9]

¶ 12 The First Circuit's affirming Opinion upheld the basic validity of the Stipulated Settlement, notwithstanding the absence of legislative ratification. The appellate court referred to the authority of the Department of Property and Procurement under 3 V.I.C. § 218(a)(5) to "manage rental properties owned or controlled by the Government…" The managerial function of reletting leased

---

[7] The District Court's reasoning in asserting subject matter jurisdiction over the Virgin Islands assets of the Fairway estate, and its determination that it would not abstain from addressing GVI's equitable claim for possession of Protestant Cay are fully set forth in its published Opinion at 433 F. Supp. 2d 226. Both rulings were affirmed by the First Circuit's Opinion, reported at 483 F.3d 34. Those rulings are not at issue here.

[8] *See* 433 F. Supp. 2d at 244.

[9] *Id.*, 433 F. Supp. 2d at 245, n.6.

*Hotel on the Cay Time-Sharing Ass'n. Inc., v. Gov't of the V.I.*;      SX-2012-CV-00013
Memorandum Opinion and Order
Page 6 of 18

2021 VI Super 102

property on the prior lessee's default was served by the Stipulated Settlement. Further, Amendment No. II of the Ground Lease, the validity of which was not in dispute, permitted GVI in the event of a lessee's default to "[e]ither cancel this Lease by notice or without canceling this Lease, relet the Lease premises or any part thereof upon such terms and conditions as shall appear advisable to [GVI]."[10] The Court of Appeals made no mention of the December 15, 2020 expiration date, as extended by Amendment No. II.[11] The First Circuit also did not address the provision of the Stipulated Settlement requiring GVI to negotiate a "new" lease until 2039, but held that "we do not believe that [31 V.I.C. § 205(c)] requires the legislature to engage in the minutiae of defaults and relettings," and that the Stipulated Settlement was enforceable.

¶ 13      On January 13, 2012, HOTC filed this present action, originally seeking to enjoin GVI and the Office of the Tax Accessor from conducting a property tax sale for delinquent taxes on HOTC's leasehold interests in Protestant Cay. The parties resolved their dispute by agreement ("Stipulation"), filed August 1, 2018, whereby HOTC accepted liability for property taxes beginning June 1, 1998, the date of commencement of its leasehold under the 1998 Stipulated Settlement, which liability HOTC agreed and acknowledged existed independent of its claims relating to the duration of its leasehold interest or the correct amount of its rental obligation to GVI.

¶ 14      Following the filed Stipulation that appeared to resolve all issues disputed by HOTC's Complaint in this action, the Court issued its Order entered August 28, 2018, ordering the parties to submit their stipulation of dismissal or otherwise inform the Court of the status of this matter. In response, HOTC filed its Advisory to the Court on September 19, 2018, acknowledging that the property tax liability issue had been fully and finally settled by parties' Stipulation, but that HOTC maintained a claim for restitution for alleged historical overpayment of rents, as well as "significant, unsettled issues concerning the enforceable duration of the Association's leasehold

---

[10] Counterclaim, Exhibit E, Amendment No. II, Article 8.03(b).

[11] The First Circuit did state: "As with Amendment No. 1, this [Amendment No. 2 to the Ground Lease] was not separately approved by the legislature," notwithstanding the fact that Amendment No. II was "Approved" by the President of the Virgin Islands Legislature December 16, 1992, some eight months after its execution by the Commissioner of Property and Procurement and six months after it was approved by the Governor. 483 F.3d at 36. Neither the District Court nor the First Circuit addressed this "approval" by the Legislature's President in the context of the requirement of 31 V.I.C. 205(c) that a lease of Government property for a term of more than one year must be "approved by the Legislature."

*Hotel on the Cay Time-Sharing Ass'n. Inc., v. Gov't of the V.I.;*      SX-2012-CV-00013
Memorandum Opinion and Order
Page 7 of 18

2021 VI Super 102

interest in Protestant Cay, and the Government's duty to negotiate in good faith for a 'new lease' until December 31, 2039."[12]

¶ 15     The Court entered Judgment July 20, 2020, pursuant to V.I. R. Civ. P. 54(b), constituting full and final adjudication of HOTC's property tax liabilities, without prejudice to its "claims relating to alleged rent overcharges and to any claims relating to the term and duration of the Association's leasehold interest in Protestant Cay."[13]

¶ 16     The Court granted HOTC leave, over GVI's objection, by Order of November 19, 2020, to file its First Amended Complaint, to declare and determine its leasehold rights over certain portions of Protestant Cay, pursuant to the Virgin Islands Uniform Declaratory Judgment Act, 5 V.I.C. §§ 1261, et seq.; and for supplemental equitable relief to enforce those rights, pursuant to 5 V.I.C. § 1268. Specifically, Plaintiff seeks a declaration and determination that the Stipulated Settlement, explicitly granting HOTC a leasehold interest in certain portions of Protestant Cay until December 31, 2039, is valid and enforceable until that date; or in the alternative, imposes a valid and enforceable duty upon GVI to negotiate in good faith an extension or new lease until December 31, 2039, subject to a negotiated rent increase, and subject further to HOTC's duty to "cooperate with the Government and any new lessee for the development of Protestant Cay ... including but not limited to the construction of a hotel/casino," provided that GVI and any new lessee/developer "honor the terms of the Declaration and the quiet enjoyment thereof by the Association." HOTC further seeks supplemental injunctive relief barring GVI from prematurely terminating its leasehold, and from purporting to grant an exclusive leasehold to a new developer of Protestant Cay, in derogation of HOTC's rights under the Stipulated Settlement.[14]

¶ 17     HOTC seeks equivalent declaratory and supplemental injunctive relief as assignee of purported leasehold rights under a certain Use Agreement to the ferry dock and certain storage facilities granted by GVI to Andrew J. Pappas in the Eviction Action.[15]

---

[12] Plaintiff's Advisory to the Court, at 1.

[13] Judgment, ¶¶ 1, 3, 6.

[14] First Amended Complaint, at 1, 2; prayers for relief ¶¶ 3 and 4.

[15] *Id.* ¶¶ 19-22.

¶ 18    GVI filed its Answer and Counterclaims on January 27, 2021, presenting causes of action to recover possession of real property pursuant to 28 V.I.C. § 281 (Count I), for trespass (Count II) and for slander of title (Count III).

## STANDARD OF REVIEW

¶ 19    In general, a Rule 12(c) motion for judgment on the pleadings, filed after the issues are joined, is governed by essentially the same standard as a Rule 12(b)(6) motion to dismiss, filed before an answer. *Reynolds v. Rohn*, 70 V.I. 887, 896 (V.I. 2019). However, the standard is not identical to that of Rule 12(b)(6), and in fact incorporates features of the standards relative to a Rule 56 motion for summary judgment.

> [T]his Court "views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff" and "[a] motion for judgment on the pleadings should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law."

*Reynolds*, 70 V.I. at 896 (quoting *United Corp. v. Hamed*, 64 V.I. 297, 305 (V.I. 2016)).

¶ 20    A Rule 12(c) motion "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law. *Bonelli v. Gov't of Virgin Islands*, 67 V.I. 714, 719 (V.I. 2017) (citing *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 566 (V.I. 2012)). Because the Motion presents no matters outside the pleadings, which themselves include by exhibits or reference voluminous historical documentation bearing on the issues herein, treatment of the Motion as one for summary judgment under Rule 56 is not required. *See* V.I. R. Civ. P. 12(d).

## DISCUSSION

### Validity of the Stipulated Settlement Agreement

¶ 21    HOTC contends that the Stipulated Settlement is binding on GVI, effectively extending the term of the Ground Lease to 2039 or, alternatively, that GVI is contractually obligated to negotiate a new lease with HOTC through that date. HOTC argues that GVI is collaterally estopped from challenging the validity of the Stipulated Settlement by the determination of the District Court of Rhode Island in the Receivership Action. However, HOTC argues that the "judicially-

imposed term limit" to December 15, 2020 recognized in that action by the District Court is nonbinding dicta; and that the Attorney General had the authority to bind GVI to a lease term extension by the Stipulated Settlement, which is not rendered unenforceable under 31 V.I.C. §205(c) by lack of legislative authorization.

¶ 22    Virgin Islands Government real estate cannot be leased for a period of more than one year without an act of the Legislature, and no such purported disposition without legislative approval shall be binding upon the Government. 31 V.I.C. §205(c). The April 24, 1964 Ground Lease that underlies HOTC's possessory timeshare interests by its terms was entered into "pursuant to the provisions of said Act No. 1179," approved by the Fifth Legislature of the Virgin Islands on April 6, 1964.[16] That Act authorized the Governor "to negotiate a lease" for Protestant Cay with Hotel-on-the-Cay, Inc. "for a term of 50 years with terms and conditions which will not be less than" specified rental rates and investments for infrastructure improvements.[17]

¶ 23    The District Court in the Receivership Action recognized that Act No. 1179 "provided the Governor of the Virgin Islands with more than merely the narrow authority to enter into a singular lease with Hotel on the Cay, Inc. in 1964. Rather, the Enabling Act granted a blanket authority to the Governor with respect to the leasing of Protestant Cay. Implicit within that broad grant is the authority conferred on the Governor to deal with any issues and disputes that would arise out of the lease of that property."[18]  In its affirming Opinion, the First Circuit similarly determined that "while § 205(c) may require some authorizing act for the disposition of government real estate, we do not believe it requires the legislature to engage in the minutiae of defaults and relettings. Because the legislature authorized the initial lease of Protestant Cay in Act No. 1178 (April 2, 1964) (sic), we conclude that no additional legislative approval was needed for the Stipulated Settlement, which relet the premises to HOTC."[19]

¶ 24    The District Court and First Circuit viewed Amendment Nos. I and II in that same vein. Significant substantive modifications to the Protestant Cay leasehold relationships were put in

---

[16] Counterclaim, Exhibit C, Lease, at 1.

[17] Act No. 1179, Section 1.

[18] *United States v. Fairway Cap. Corp.*, 433 F. Supp. 2d at 245

[19] *United States v. Fairway Cap. Corp.*, 483 F.3d at 46.

place by those amendments. The Ground Lease specifically permitted the lessee to assign or mortgage its leasehold interest pursuant to a financing agreement. In 1969, five years following execution of the Ground Lease, Amendment No. I facilitated such financing, with the approval of the Governor, by including certain amendments required by the leasehold mortgage lender deemed necessary to protect its interests. In 1980, then-Ground Lease assignee Oliver Plunkett submitted his leasehold interest to the provisions of the Declaration by which HOTC's interest originated "for the remaining term of the Ground Lease," then 33 more years.[20]

¶ 25    The original Ground Lease 50-year term was extended in 1992 for an additional 28 years, to December 15, 2020, by Amendment No. II between then lessee assignee Legend Resorts, L.P. and GVI. The president of Legend's general partner executed Amendment No. II on April 13, 1992, followed by GVI's Commissioner of Property and Procurement on May 6, 1992, "Approved" by the Governor on June 30, 1992, and "Approved" by the President of the Virgin Islands Legislature on December 16, 1992. The record is silent as to the process by which the Legislature's President approved Amendment No. II extending the Ground Lease term, and there has been no judicial review and determination as to whether such approval satisfied the provisions of 31 V.I.C. § 205(c).[21]

¶ 26    On Legend Resorts' default, GVI brought its 1996 Eviction Action, in which HOTC intervened to protect its timeshare possessory interests, leading to the May 1998 Stipulated Settlement that on its face extended HOTC's possessory interest until 2039. A settlement agreement in litigation is a binding contract, governed by common law contract principles. *See*

---

[20] First Amended Complaint, Exhibit A; Counterclaim, Exhibit A, Declaration, at 1.

[21] Without evidentiary support, HOTC's Response in Opposition to Motion for Judgment on the Pleadings (at 2) quotes the Receiver's brief in the appeal of the Receivership Action, asserting the Receiver's "finding" that Amendment No. II, signed by the President of the Legislature, "was not separately approved by the legislature." Without reference to the statutory requirement of legislative approval, the District Court noted that December 15, 2020 was the "conclusion of the term of years" as "established by Amendment II." 433 F. Supp. 2d at 245, and n.6. The First Circuit's affirming Opinion stated, without acknowledging the Legislature's President's approval, that "neither of the prior amendments to the Ground Lease appear to have received legislative approval." 483 F.3d at 46. As the term of the Ground Lease, extended through December 15, 2020, has concluded and the dispute herein relates only to a further prospective extension to 2039, the issue of the sufficiency under 31 V.I.C. § 205(c) of legislative approval of Amendment No. II need not be determined here. As did the District Court, this Court finds it notable that "despite the notoriety of the issues" over decades, the Legislature of the Virgin Islands has not sought to intervene in any action to challenge the Ground Lease extension to December 2020 pursuant to Amendment No. II. *See* 433 F. Supp. 2d at 244 n.5.

*Toussaint v. Stewart*, 67 V.I. 931, 951 (V.I. 2017) (citations omitted). Interpretation of a contract provision is to be undertaken in a manner to enforce the intended meaning of the parties. "Any such reading which renders contract provisions pointless, superfluous, or ineffective violates basic notions of contract interpretation, and leads to an absurd result which should not be entertained." *Weary v. Long Reef Condominium Ass'n,* 57 V.I. 163, 175 (V.I. 2012) (Hodge, C.J., dissenting in part), citing RESTATEMENT (SECOND) OF CONTRACTS § 203(a). *See also Johnston v. St. Croix Financial Center,* 2019 VI Super 133U ¶ 11 (V.I. Super. 2019).

¶ 27 By its terms, the Stipulated Settlement intended to become effective under the existing Ground Lease, rather than as a new separate independent lease agreement. HOTC's interest was granted "free and clear from any and all obligations and defaults of... prior lessees," indicating that the possessory interest granted HOTC arose under the same Ground Lease under which those prior defaulting lessees held their interests. The Stipulated Settlement also specifically identifies HOTC's leasehold interest as in "that portion of property as shown on the Declaration," which was established in 1980 under the Ground Lease. Further, HOTC's rental obligation "represents a pro-rata share of the lease payment due under Amendment No. II to the original Lease Agreement..."[22]

¶ 28 If the Stipulated Settlement were deemed to represent a new and independent lease agreement between GVI and HOTC, it would plainly run afoul of 31 V.I.C. § 205(c), as it was entered into without the approval of the Legislature. The District Court in the Receivership Action "interpret[ed] the language of the Stipulated Settlement in a manner which confirms that it was designed to be effective under the existing Ground Lease rather than establish a new, unlawful lease that is without legislative approval."[23] The Court of Appeals agreed. "To the extent that GVI claims that the Stipulated Settlement constituted an entirely new lease, we agree with the district court that, in the absence of contrary indication, contracts should be construed so as to be legal and enforceable. Thus, in accordance with this canon of contract construction, we construe the Stipulated Settlement to be a valid and lawful reletting rather than an invalid and unlawful separate lease."[24]

---

[22] First Amended Complaint, Exhibit B; Counterclaim, Exhibit B, Stipulated Settlement §§ 3.a., 3.b.

[23] 433 F. Supp. 2d at 245.

[24] 483 F.3d at 46, n.8 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 203(a) cmt. c.).

*Hotel on the Cay Time-Sharing Ass 'n. Inc., v. Gov 't of the V.I.;*  SX-2012-CV-00013
Memorandum Opinion and Order
Page 12 of 18

2021 VI Super 102

¶ 29    The Stipulated Settlement acknowledges that HOTC's possessory rights are founded in the Declaration, which itself was founded upon the Ground Lease "and continuing for the remaining term of said Ground Lease." The Court concurs with the decision of the District Court in the Receivership Action, affirmed by the First Circuit. The Stipulated Settlement is binding and enforceable on the parties, conveying the Protestant Cay possessory interests in issue to HOTC, pursuant to Act No. 1179, wherein the Legislature authorized the Governor to negotiate the 50-year Ground Lease incorporating specified minimum terms and conditions, providing GVI rights on default and permitting assignments of the lessee's interests with the Governor's consent. By that authorization over the decades since, various interests have been transferred and assigned multiple times, with the consent of then sitting governors, none of which have ever been challenged by the Legislature as ultra vires. Those transfers of interests include the Stipulated Settlement by which HOTC gained possession following the prior lessee's default, consistent with the broad authority granted the Governor by the Legislature in Act No. 1179.[25]

¶ 30    The Enabling Act granted the Governor broad, but not unlimited, authority regarding the Ground Lease. The Act authorized a 50-year lease of Protestant Cay. No further lease extension was permitted unless "approved by the Legislature" pursuant to 31 V.I.C. §205(c).[26] Simply, the Governor did not have the authority to extend the Ground Lease by the Stipulated Settlement without legislative approval.

¶ 31    HOTC contends that the Attorney General had authority to enter into the Stipulated Settlement, and as such, the agreement is valid and enforceable. GVI was represented in the Eviction Action by the Office of the Attorney General, which had statutory authority to prosecute the action[27] Yet, HOTC's assertion that the Attorney General had lawful authority to settle the Eviction Action with HOTC ascribes more authority to the Attorney General and the Department of Justice than exists in law. The U.S. Supreme Court addressed the extent of authority "for agencies charged with administering congressional statutes. Both their power to act and how they

---

[25] Reletting of interests is specifically sanctioned by Amendment No. II (§ 8.03), never challenged, that also extended the Ground Lease term to December 15, 2020.

[26] As noted, Amendment No. II extended the term to December 15, 2020 as "Approved" by the President of the Legislature. The validity of that approval and Ground Lease extension, now concluded, is not addressed here.

[27] *See* 3 V.I.C. § 114(a)(1).

are to act are authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 297 (2013). *See also Chapman v. Cornwall*, 58 V.I. 4341, 437 (V.I. 2013) ("[i]t is a fundamental principle that government, in an exercise of authority, must derive its power to act from a source which grants it." (citing *Williams-Jackson v. Public Employees Relations Board*, 52 V.I. 445, 455 (V.I. 2009)).

¶ 32    The Attorney General has inherent authority—just as any lawyer representing a private litigant has inherent authority—to stipulate to matters of procedure, while his or her power to settle matters in litigation must be grounded in actual authority. "As an agent for his client, an attorney may freely enter into agreements regarding procedural aspects of the case, but may enter into agreements substantially impacting on the principal's case only to the extent he has the actual authority to do so." *Gov't of the V.I. v. 0.459 Acres of Land*, 286 F. Supp. 2d 501, 506 (D.V.I. App. 2003). Here, title 3, section 205(c) of the Virgin Islands Code expressly denies the Attorney General the legal authority to enter into the Stipulated Settlement to the extent that it purports to extend the term of the Ground Lease without the approval of the Legislature. Moreover, where a principal's authority is limited by statute, the contracting party is deemed to be aware of that fact and cannot rely on apparent authority to validate a transaction. "To recover for breach of an express or implied-in-fact contract with the United States, Landau must show that the officer whose conduct is relied upon had actual authority to bind the government in contract.... apparent authority will not suffice to hold the government bound by the acts of its agents." *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947); other citations omitted).

¶ 33    The Governor,[28] the Commissioner of Property and Procurement,[29] and the Attorney General[30] were all authorized to act on behalf of the Government with respect to the Protestant Cay Eviction Action, and such broad authorization included the right to resolve the litigation with HOTC by the Stipulated Settlement. GVI, through those officers, was permitted to settle its dispute with HOTC, by effectively reletting the Ground Lease interests to HOTC for the full term of the Ground Lease through December 15, 2020. Those officers, however, were without authorization to extend the term without approval of the Legislature and any attempt through the Stipulated Settlement to do so was ultra vires and unenforceable.

¶ 34    HOTC further asserts that 31 V.I.C 205(d) may exempt Protestant Cay from the lease-ratification requirement, noting that section 205(d), enacted April 1, 1964, by Act No. 1123—within five days of the Enabling Act, No. 1179, enacted April 6, 1964—exempts from the legislative ratification requirement "[a]ny agreements, contracts, leases or other undertakings made in fulfillment of or pursuant to directions or authorization of the Legislature prior to April 1, 1964."[31] HOTC speculates, without evidence, that the Legislature's contemporaneous conduct suggests that the Protestant Cay Ground Lease indeed fulfilled an "undertaking" that occurred prior to April 1, 1964, noting that the Legislature did not separately ratify the April 24, 1964 Ground Lease as required by section 205(c). Even if true that the original Ground Lease constituted an undertaking exempt from legislative ratification under section 205(d), the Stipulated Settlement, executed three and a half decades later was not contemplated by that original undertaking. As such, extension of the lease term requires the approval mandated by section 205(c). To the extent that HOTC argues that the contemporaneous enactment of section 205(d)(3) and the original Ground Lease should be read to mean that the Fifth Legislature exempted all Protestant Cay leases

---

[28] Revised Organic Act of 1954, § 11: "The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of the Virgin Islands."

[29] 3 V.I.C. § 218 (a)(2) and (5): Department of Property and Procurement shall "have authority for the management, control, disposition and use of government real property" and to "manage rental properties owned or controlled by the Government..."

[30] 3 V.I.C. § 114(a)(1): The Attorney General has the power and duty "to appear for and represent the executive branch of the Government of the Virgin Islands before the courts in all civil proceedings in which the said Government, or any executive department, board, commission, agency, instrumentality or officer thereof is interested."

[31] 31 V.I.C. § 205(d)(3).

following the 1964 Ground Lease without limitation, such argument is as unpersuasive as it is fanciful.

¶ 35    As the Stipulated Settlement was not authorized or ratified by the Virgin Islands Legislature, as a matter of law the attempted Ground Lease term extension is not enforceable against or binding upon GVI. Similarly, as to HOTC's argument that the Stipulated Settlement imposes a contractual duty on GVI to enter into a new lease with HOTC to 2039, the lack of legislative authorization or approval is fatal. HOTC has no lawful possessory interest in Protestant Cay after December 15, 2020.

¶ 36    In July 1998, GVI entered into a separate Stipulated Settlement with Andrew J. Pappas, another intervening party in the Eviction Action. Pappas intervened to protect his interest in the use of a ferry dock and one-half of the adjacent storage area of the resort on Protestant Cay, obtained from Harborfront Properties, Inc., a former lessee under the Ground Lease, through a certain Use Agreement, executed December 14, 1990.[32] Pappas assigned his rights under the Pappas Stipulated Settlement to HOTC as part of the settlement of litigation involving those parties (*Pappas v. Hotel on the Cay Time-Sharing Ass'n, Inc.*, Super. Ct. Case No. SX-1999-CV-00317). The Pappas Stipulated Settlement employs substantially identical language to that of the GVI-HOTC Stipulated Settlement with regard to the extension of the original term to 2039.[33] For the same reasons that the HOTC Stipulated Settlement must fail for lack of legislative approval as required by law, the Pappas Stipulated Settlement assigned to HOTC also fails with regard to an extended term beyond the original Ground Lease term, as extended previously to December 15, 2020.[34]

---

[32] The Pappas Stipulated Settlement and Use Agreement are attached as Exhibits C and D, respectively, to HOTC's First Amended Complaint. Interestingly, the Use Agreement granting Pappas the use of the dock and one-half of the storage facility was signed on behalf of Harborfront Properties, Inc. by Andrew J. Pappas, its vice-president.

[33] "The leasehold estate held by Pappas expires on December 31, 2039." Further, the rental sum due "is effective until such time as the Government enters into a new lease with Pappas for the premises described in the Use Agreement, together with all easements and rights set forth therein from the date of the new lease to December 31, 2039, subject to the Government being the prevailing party in the above-entitled action." Pappas Stipulated Settlement, ¶¶ 3(a); 3(b).

[34] GVI also argues that both Stipulated Settlement agreements are unenforceable according to their own terms as each references a condition precedent to the term extensions. The extension "to December 31, 2039 [is] subject to the Government being adjudged the prevailing party in the [eviction] action." All claims in the Eviction Action were dismissed with each party bearing its own costs by Order entered September 26, 2019. GVI argues that it filed the Eviction Action in 1996 to regain possession of Protestant Cay, which possession has yet to be regained. Since all

**Collateral Estoppel**

¶ 37   The Supreme Court of the Virgin Islands, following a *Banks* analysis, adopted the collateral estoppel doctrine in its traditional form as part of the Virgin Islands common law. "[T]he general rule is that when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties...." *Stewart v. Virgin Islands Bd. of Land Use Appeals*, 66 V.I. 522, 548 (V.I. 2017) (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015)).

> [T]o bar relitigation of an issue under the doctrine of collateral estoppel, an asserting party must demonstrate: (1) the issue to be barred is identical to an issue actually and necessarily decided in the prior action; (2) the prior action was adjudicated in a decision that was final, valid, and on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Stewart*, 66 V.I. at 549–50 (citations omitted).

¶ 38   Ironically, HOTC asserts that GVI is collaterally estopped from challenging the validity of the Stipulated Settlement by virtue of the decision of the District Court of Rhode Island in the Receivership Action. The irony, of course, stems from the fact that the District Court's decision in *United States v. Fairway Cap. Corp.* held that "[t]he Stipulated Settlement is deemed valid, effective and enforceable until December 15, 2020, which is the conclusion of the term of years set forth in Amendment II to the Ground Lease."[35]

¶ 39   All four factors recognized by *Stewart* are present and confirm the propriety of a determination that both HOTC and GVI are both collaterally estopped from seeking to relitigate the issues of the validity and duration of the Ground Lease as determined by the District Court in the Receivership Action. (1) Those issues here of the validity of HOTC's possessory interest under the Stipulated Settlement and the effective date of the conclusion of HOTC's interest are identical

---

claims in the Eviction Action were dismissed, including GVI's claim to possession, GVI was not "adjudged the prevailing party," such that the condition precedent to leasehold interest extensions as to each Stipulated Settlement has gone unfulfilled and for that reason as well, the Stipulated Settlements are unenforceable. The Court need not address that argument as the decision set forth herein rests on other stated grounds.

[35] 433 F. Supp. 2d at 245.

*Hotel on the Cay Time-Sharing Ass'n. Inc., v. Gov't of the V.I.*;    SX-2012-CV-00013
Memorandum Opinion and Order
Page 17 of 18

2021 VI Super 102

to those same issues that were actually and necessarily decided in the prior action. (2) That prior Receivership Action was adjudicated in a decision that was final, valid, and on the merits, affirmed on appeal by the federal circuit court. (3) GVI was a direct party to the Receivership Action and the interests of HOTC, as holder of interests in timeshare units, was in privity to the interests of Fairway Capital Corporation, also a holder of interests in Protestant Cay timeshare units. (4) HOTC appeared in the Receivership Action,[36] and therefore had a full and fair opportunity to litigate in that prior action the issue of the duration of its possessory interests pursuant to the Stipulated Settlement. Because those issues in dispute here were fully and finally adjudicated in the Receivership Action, GVI should be deemed to be collaterally estopped from arguing the invalidity of the HOTC Stipulated Settlement. Similarly, HOTC should not be permitted to relitigate here the termination date of its possessory interests previously and finally determined.

¶ 40    Understandably, HOTC focuses on the District Court's determination that the Stipulated Settlement is valid and binding between the parties but seeks to brush off as "essentially dicta" the court's rejection of the claimed extension of the Ground Lease to 2039. The District Court's rejection of an extended lease term was not dicta, but rather a necessary component of its ruling that the Stipulated Settlement was valid. The court interpreted the language of the Stipulated Settlement as "designed to take effect under the existing Ground Lease rather than constitute an unlawful independent lease." That interpretation led directly to the conclusion that the Stipulated Settlement "was designed to be effective under the existing Ground Lease rather than establish a new, unlawful lease that is without sufficient legislative approval."[37] Further, "[a]ny attempt to extend the Ground Lease to 2039 under the Stipulated Settlement was ultra vires.[38] The issue of the termination date of HOTC's possessory interests was essential to the District Court's finding of the validity of those interests under the Stipulated Settlement, and is binding upon HOTC here.

---

[36] In its July 23, 2021 Reply, GVI submitted as Exhibit A HOTC's Motion for an Order Lifting the Judicial Stay for a Limited Purpose, filed September 28, 2001 in the Receivership Action (*U.S.A. v. Fairway Capital Corp.*; Civ. Case No. 2000-00035 (D.R.I.)). Although such filing is not part of the pleadings, it may be considered as a matter of judicial notice (V.I.R.E. 201(b)(2)).

[37] *Id.* at 244, 245.

[38] *Id.* at 245, n.6.

## CONCLUSION

¶ 41    GVI is entitled to judgment with respect to possession of Protestant Cay as a matter of law. GVI's Motion will be granted, and final judgment will enter in favor of GVI dismissing with prejudice HOTC's prayers seeking declaratory relief ¶¶ 1 and 2 of the First Amended Complaint that its rights under the HOTC Stipulated Settlement and under the Pappas Stipulated Settlement entitle it to possession of interests in Protestant Cay until December 31, 2039. Because prayers for relief ¶¶ 3 and 4 of the First Amended Complaint seek injunctive relief relative to HOTC's claimed right to an extended possessory interest, those are rendered moot by the ruling herein and will also be dismissed with prejudice. Further, final judgment will enter in favor of GVI on Count I of its Counterclaim, entitling GVI to present recovery of possession of Protestant Cay, requiring HOTC to vacate Protestant Cay by a date certain to be established by agreement of the parties or further order. The Court determines that final judgment shall enter as to those claims as there is no just reason for delay, pursuant to V.I. R. Civ. P. 54(b). Ruling will be deferred on GVI's Motion seeking damages for trespass (Counterclaim Count II), as will the adjudication of GVI's action for damages for slander of title (Counterclaim Count III) and HOTC's claim for reimbursement of rent overpayments (¶ 5 of the First Amended Complaint). A Judgment Order incorporating the foregoing accompanies this Opinion.

DATED: October___7___, 2021.

DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By:_____
Court Clerk Supervisor
10/7/2021

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
October 07, 2021 01:23 PM
SX-2012-CV-00013
TAMARA CHARLES
CLERK OF THE COURT



IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

HOTEL ON THE CAY TIME-SHARING
ASSOCIATION, INC.,

                               Plaintiff,

       v.

GOVERNMENT OF THE VIRGIN ISLANDS,

                            Defendant.

CASE NO. SX-2012-CV-00013

ACTION FOR DECLRATORY
JUDGMENT AND FOR
SUPPLEMENTAL RELIEF

## JUDGMENT ORDER

In furtherance of Memorandum Opinion entered in this matter this date, the Court having determined that there is no just reason for delay and that final judgment shall enter pursuant to V.I. R. Civ. P. 54(b) as to those certain claims noted below, it is hereby

ORDERED that Defendant Government of the Virgin Islands'("GVI") Motion for Judgment on the Pleadings ("Motion") is GRANTED, in part, and ruling is DEFERRED, in part. It is further

ORDERED that final JUDGMENT is entered in favor of GVI and against Plaintiff Hotel on the Cay Time-Sharing Association, Inc. ("HOTC") on prayers for relief ¶1 and ¶2 of HOTC's First Amended Complaint, and those claims are DISMISSED with prejudice. In light of such Judgment, HOTC's prayers for relief ¶3 and ¶4 are rendered moot and, accordingly, are also DISMISSED with prejudice. It is further

ORDERED that final JUDGMENT is entered in favor of GVI and against HOTC on Count I of GVI's Counterclaim pursuant to 28 V.I.C. § 281, and GVI is forthwith granted possession of all those portions of Protestant Cay presently in the possession of HOTC, and any persons claiming rights under HOTC, effective in such manner and on such date as the parties shall agree, or as otherwise set by further order of the Court. It is further

ORDERED that ruling is DEFERRED on GVI's Motion as to Count II and its claim for damages for trespass. It is further

ORDERED that this matter shall come on for status conference, via Zoom, on **November 16, 2021 at 9:00 a.m.** to address all outstanding motions and matters requiring further attention of the Court, including a timeline for final adjudication, or other resolution, of HOTC's claim for reimbursement of rent overpayments (¶ 5 of First Amended Complaint), and of GVI's claims for damages for trespass and slander of title (Count II and Count III of Counterclaim), and the claims of each party for an award of its costs and other relief. It is further

ORDERED that the parties shall within 14 days of the date of this Order meet and confer regarding, among other matters, the surrender of HOTC's possession of its interests on Protestant Cay, outstanding motions and matters requiring further attention in the litigation, including a proposed revised scheduling order regarding resolution of all unresolved claims and issues. It is further

ORDERED that not less than two business days prior to the status conference scheduled above, each party shall submit a report in writing, not to exceed two pages, listing all matters that require further attention and prospects for early resolution of all matters in dispute.

DATED: October____7____, 2021.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:

TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor
10/7/2021